David A. KORCH, P.T., Petitioner

v.

STATE BOARD OF PHYSICAL THERAPY, Respondent.

Commonwealth Court of Pennsylvania.

Argued Jan. 30, 2006.

Decided March 27, 2006.

Reargument En Banc Denied May 22, 2006.

Publication Ordered June 19, 2006.

---

6. *See:* Pa.R.A.P.1925(b).

Michael J. Bruzzese, Pittsburgh, for petitioner.

Beth Sender Michlovitz, Asst. Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

David A. Korch, P.T., petitions for review of an order of the State Board of Physical Therapy (Board) formally reprimanding Korch and ordering that he pay a civil penalty in the amount of $1,000.00 for violating Section 11(a)(6) of the Physical Therapy Act (Act)[1] by committing unprofessional conduct and failing to conform to the minimal standards of acceptable and prevailing physical therapy practice by improperly removing patient records from his employer's place of business. We affirm.

Korch is a licensed physical therapist. In February 2001, while working as a physical therapist for Washington Hospital at the Cameron Wellness Center, Korch was placed in the Hospital's progressive discipline program for repeated noncompliance with timely documentation. Specifically, Korch repeatedly failed to complete patient discharge summaries in a timely manner and he received oral and written warnings about this failure between February 2001 and July 2001.[2] On July 12, 2001, Korch was issued a suspension,

---

1. Act of October 10, 1975, P.L. 383, *as amended*, 63 P.S. § 1311(a)(6). Section 11(a)(6) of the Act provides that the Board may suspend or revoke the license of any person who has been found guilty of unprofessional conduct. Section 11(a)(6) states further that "[u]nprofessional conduct shall include any departure from or the failure to conform to the minimal standards of acceptable and prevailing physical therapy practice, in which proceeding actual injury to a patient need not be established."

2. While working for the Hospital, Korch would treat between twenty to twenty-five patients each day. Reproduced Record (R.R.) at 202a–203a. The patients receiving treatment were scheduled in fifteen minute blocks and the patients receiving evaluations were scheduled in thirty minute blocks. *Id.* at 186a. Korch was frequently scheduled to see up to four patients at a time in different locations within the Hospital. *Id.* at 186a–187a.

pending discharge, for failing to complete patient documentation in a timely manner.

Thereafter, after being informed that his employment was being terminated, Korch requested that he be permitted to resign. The Hospital agreed and asked him to return any hospital property in his possession. Korch returned his hospital identification and key. Korch resigned his position effective July 16, 2001.

In January 2002, the Hospital received a subpoena to produce a patient's medical records. Upon investigation, the Hospital learned that the patient's file was missing and that Korch had been the patient's treating physical therapist. The Hospital contacted Korch regarding the whereabouts of the patient's medical file. Korch stated that he had boxes that he had packed up when he left the Hospital and that he would check before giving a definitive answer. The Hospital informed Korch that a subpoena would be issued to him if the file was not found. Thereafter, Korch returned the patient file to the Hospital.

While looking for the patient's file, the Hospital discovered that ten other patient files were missing where Korch was the treating physical therapist. When Korch telephoned the Hospital to confirm that it had received the patient file that he had returned, he was asked whether he had other patient files in his possession. Korch responded in the negative.

On February 1, 2002, legal counsel for the Hospital sent Korch a letter demanding that he return all medical records in his possession. On February 14, 2002, Korch delivered 89 patient medical files to the Hospital that he had in his possession.

Korch was unable to complete the documentation of his patient files in a timely manner and took them home to try and finish the documentation. Korch knew that taking patient files home that belonged to the Hospital was against Hospital policy and wrong. Korch kept the files at his home in a locked file cabinet for approximately one year to four months before returning them to the Hospital. Korch never revealed the contents of the files to anyone else and never showed them to anyone.

On August 26, 2003, the Commonwealth filed a three count order to show cause alleging that Korch was subject to disciplinary action under Section 11(a)(6) of the Act as a result of committing unprofessional conduct and failing to conform to the minimal standards of acceptable and prevailing physical therapy practice. On August 29, 2003, Korch filed an answer and requested a formal hearing before the Board. A formal hearing was held on May 26, 2004 at which time the Commonwealth withdrew count three of the order to show cause. In addition, the Commonwealth withdrew part of count one and count two that alleged that the removal of patient records occurred after Korch's employment with the Hospital had terminated. Finally, the Commonwealth withdrew from count one the allegation that Korch removed records of patients that he did not treat during his employment. Remaining therefore in count one was the allegation that Korch improperly removed patient records from the Hospital where he was employed and the allegation in count two that Korch failed to ensure that patient information gathered as a result of the therapist-patient relationship remained confidential when he removed 90 confidential medical files from the Hospital and took them to his residence.

Based on the facts found by the Board, as set forth above, the Board concluded that Korch was subject to disciplinary action under Section 11(a)(6) of the Act as alleged in count one of the order to show

cause, in that he committed unprofessional conduct and failed to conform to the minimal standards of acceptable and prevailing physical therapy practice by improperly removing patient records from his employer. In so concluding, the Board determined that the unauthorized removal of patient records from the Hospital fell under the category of the actual practice of physical therapy and not under the category of administrative practice.

The Board concluded further that Korch was not subject to disciplinary action under Section 11(a)(6) of the Act as alleged in count two of the order to show cause, in that he did not commit unprofessional conduct or fail to conform to the minimal standards of acceptable and prevailing physical therapy practice by failing to ensure that patient information gathered as a result of the therapist-patient relationship remained confidential when he removed 90 confidential medical files from the Hospital and took them to his residence. The Board determined that the record was void of any evidence that Korch failed to keep the records confidential or that he revealed information contained in those records to a third party. The Board dismissed count two of the order to show cause.

Based on Korch's acknowledgment that what he did was wrong and the fact that there was no evidence of actual patient harm as a result of Korch's actions, the Board determined that the appropriate sanction to impose was a formal reprimand and the imposition of a civil penalty in the amount of $1,000.00 against Korch's license. This appeal followed.[3]

Herein, we are asked to review whether the Board's determination that Korch committed unprofessional conduct and failed to conform to the minimal standards of acceptable and prevailing physical therapy practice by improperly removing patient files from his employer was: (1) erroneous as a matter of law; and (2) supported by substantial evidence.

■ In support of his appeal, Korch argues that the finding of unprofessional conduct must relate to the actual practice of physical therapy, not the administrative functions of a physical therapist or his employer. Korch contends that "physical therapy" is defined in Section 2 of the Act[4] in the terms of actual physical/tangible activity involved with the practice of the profession itself, i.e., the laying on of hands upon the patient. Korch argues that absent from the definition is any reference to the administrative aspects of an employment relationship between a physical therapist and his or her employer. Korch contends that this Court has held that his definition clearly and unambiguously manifests the General Assembly's intent that the Act is meant to regulate the actual performance of physical therapy, rather than the administrative practice of physical therapists. See Kepler.

■ Korch argues further that the determination that Korch engaged in unprofessional conduct is not supported by substantial evidence. Korch contends that the Commonwealth failed to prove that patient file retention policies and procedures instituted, implemented and maintained by healthcare providers involve the act of providing physical therapy by licensed physical therapists.

---

3. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; Kepler v. State Board of Physical Therapy, 720 A.2d 496 (Pa.Cmwlth.1998).

4. 63 P.S. § 1302.

As noted previously herein, pursuant to Section 11(a)(6) of the Act, the Board may suspend or revoke the license of any person who has been found guilty of unprofessional conduct. 63 P.S. § 1311(a)(6). Section 11(a)(6) states further that "[u]nprofessional conduct shall include any departure from or the failure to conform to the minimal standards of acceptable and prevailing physical therapy practice, in which proceeding actual injury to a patient need not be established." *Id.*

At the time of the rule to show cause was issued and this matter was adjudicated by the Board, unprofessional conduct was defined further in the rules and regulations of the Board as follows:

A physical therapist who engages in unprofessional conduct is subject to disciplinary action under section 11(a)(6) of the act (63 P.S. § 1311(a)(6)). Unprofessional conduct includes the following:

(1) Harassing, abusing or intimidating a patient.

(2) Revealing information obtained as a result of the therapist-patient relationship to a third party who is not involved in the patient's care, without the prior written consent of the patient, except as authorized or required by statute.

(3) Failing to exercise appropriate supervision over a person who is authorized to render services only under the supervision of the physical therapist.

(4) Accepting a patient for treatment or continuing treatment if benefit cannot reasonably be expected to accrue to the patient, or misleading a patient as to the benefits to be derived· from physical therapy.

(5) Unconditionally. guaranteeing the results of physical therapy treatment.

(6) Practicing physical therapy while the ability to practice is impaired by alcohol, drugs or a physical or mental disability.

(7) Charging a patient or a third-party payor for a physical therapy service which is not performed.

(8) Receiving a fee for referring a patient to a third person.

(9) Advertising physical therapy services in a false, misleading or deceptive manner.

(10) Assigning or delegating to physical therapist assistants or supportive personnel activities prohibited from assignment or delegation under §§ 40.32, 40.53 and 40.171 (relating to functions of supportive personnel; nondelegable activities; accountability; and functions of physical therapist assistants).

(11) Violating a provision of the act or this chapter which establishes a standard of conduct.

49 Pa.Code § 40.52.[5]

Section 2 of the Act provides as follows:

"Physical therapy" means the evaluation and treatment of any person by the utilization of the effective properties of physical measures such as mechanical

---

**5.** Section 40.52 of Title 49 of the Pennsylvania Code was amended on August 27, 2004, effective August 28, 2004. This amendment added subsection 12 which provides that unprofessional conduct includes the failure to maintain adequate patient records. However, because the amendment was effective after the date of the events in this matter, it is not applicable herein and we note further that the Board did not find that Korch failed to maintain adequate patient records. Specifically, 49 Pa.Code 40.52(12) provides as follows:

(12) Failure to maintain adequate patient records. Adequate patient records include at a minimum sufficient information to identify the patient, a summary of the findings of the examination, an evaluation, a diagnosis, the plan of care including desired outcomes, and the treatment record.

stimulation, heat, cold, light, air, water, electricity, sound, massage, mobilization and the use of therapeutic exercises and rehabilitative procedures including training in functional activities, with or without assistive devices, for the purpose of limiting or preventing disability and alleviating or correcting any physical or mental conditions, and the performance of tests and measurements as an aid in diagnosis or evaluation of function.

63 P.S. § 1302.

In *Kepler,* the petitioner, a licensed physical therapist who worked as an independent contractor providing at-home physical therapy services on behalf of a visiting nurse association (association), failed to submit physical therapy treatment records to the association. *Kepler,* 720 A.2d at 497. The association sent several letters of complaint to the petitioner regarding this failure and when the petitioner failed to respond to the association's complaints, she was terminated. *Id.*

The association then filed a letter of complaint with the Bureau of Professional and Occupational Affairs alleging that petitioner's billing paper work was three moths late. *Id.* An investigation ensued resulting in the bureau issuing an order to show cause. *Id.* The petitioner filed an answer to the order in which she admitted all factual allegations. *Id.* Thereafter, the bureau referred the matter to the Board and a formal hearing was held before the Board at which the petitioner appeared *pro se. Id.*

By adjudication and order issued on February 5, 1998, the Board determined that petitioner violated Sections 11(a)(3) [6] and (6) of the Act by committing repeated acts of negligence or incompetence in the practice of physical therapy and by engaging in unprofessional conduct. *Id.* The Board concluded that the association was unable to bill insurance companies for services rendered because the petitioner submitted the records in an untimely manner. *Id.* The Board also found that the petitioner failed to submit physical therapy treatment records in a timely manner because she undertook an unmanageable caseload which included patients from agencies other than the association. *Id.* at 497–98.

Accordingly, the Board suspended the petitioner's license for one year, nine months, and imposed a civil penalty. *Id.* The petitioner filed a petition for review with this Court which reversed the Board's order. *Id.* We concluded that the Board's findings that the petitioner violated the Act were not supported by substantial evidence given that the complaints against the petitioner related only to her billing practices and not her actual practice of physical therapy.

With respect to the Board's determination that the petitioner violated Section 11(a)(6) of the Act, we held, based on the unambiguous language of Section 11(a)(6) that "the General Assembly intended for the Board to discipline conduct committed by physical therapists which departs from the minimally accepted standards in the physical therapy profession to extent that it relates to the level of care provided to a patient." *Id.* at 499. We reasoned that there was "nothing in the language of the statute that could reasonably be interpreted to mean that the General Assembly intended for the [B]oard to regulate the administrative practices of physical therapists." *Id.*

We also held that "[a]lthough the regulations ... expand the definition of unpro-

---

**6.** 63 P.S. § 1311(a)(3). Section 11(a)(3) provides that the Board may suspend or revoke the license of any person who has committed repeated occasions of negligence or incompetence in the practice of physical therapy.

fessional conduct beyond the auspices of the relationship between the patient and physical therapist, they do not directly address billing practices of physical therapists." *Id.* We concluded further that "the regulations focus on the practice of physical therapy, prohibition of third-party referrals, and fraudulent conduct by physical therapists which involves the public or third-party payers" and that "[n]one of the regulations could be reasonably interpreted as allowing the [B]oard to penalize petitioner solely for untimely submission of treatment records." *Id.*

Comparing the facts of the present case to *Kepler*, we conclude that this matter is distinguishable from *Kepler*. In *Kepler*, the petitioner worked as an independent contractor for an association that depended upon the petitioner to submit the treatment records in a timely manner in order to bill insurance companies for the services rendered. Herein, Korch was employed by the Hospital as a regular employee, not an independent contractor, and the patient files were the property of the Hospital not Korch.

It is undisputed that Korch removed 90 patient files from the Hospital's premises for one year and four months because he was unable to complete the documentation of the patient files in a timely manner. It was not until the Hospital discovered the files missing well after Korch's employment was terminated, that Korch returned the patients' files. Unlike the conduct in *Kepler*, we conclude that Korch's conduct in this case is tantamount to unprofessional conduct. Not only does such conduct subject the Hospital to liability, it jeopardizes the level of care provided to a patient. As this Court held in *Kepler*, "[b]ased on the language presently incorporated in the Act, it is clear that the General Assembly is primarily concerned with regulating the quality of care provided by licensed physi-

cal therapists." *Id.* The Board aptly stated:

> ... that the maintenance of hospital patient records is critical to providing quality patient care. Patient records are a necessary means of documenting treatment of a patient and a patient's response to treatment. Patient records are on[e] of the principle ways of communicating from one health care provider to another what is going on with a particular patient's treatment plan and medical history. The inability to locate a particular patient's medical file in the event of a medical emergency could result in catastrophic consequences. [Korch's] actions increased the risk of harm to patients whose records he took.

Board Opinion at 11.

Clearly, such potential consequences relate to the level of care provided to a patient, and do not merely relate to the administrative practices of physical therapists. Accordingly, we agree with the Board that the act of removing patient files from an employer's premises relates to the level of care provided to a patient and does not relate to an administrative practice such as failing to provide the necessary information for billing purposes. Therefore, the Board properly found that Korch was subject to disciplinary action under Section 11(a)(6) of the Act. Moreover, such finding is supported by substantial evidence. Korch acknowledged that his conduct was wrong resulting in the Board imposing a formal reprimand and a $1,000.00 civil penalty rather than a harsher sanction.

The Board's order is affirmed.

### ORDER

AND NOW, this 27th day of March, 2006, the order of the State Board of Physical Therapy entered in the above captioned matter is affirmed.

CONCURRING OPINION BY Judge McGINLEY.

I concur in the majority's conclusion that the removal of patient files from an employer's premises does constitute "unprofessional conduct" within the interpretation of Section 11(a)(6) of the Act, 63 P.S. 1311(a)(6). However, I would further distinguish *Kepler v. State Board of Physical Therapy*, 720 A.2d 496 (Pa.Cmwlth.1998).

As the majority correctly notes, *Kepler* is distinguishable because Susan E. Kepler was an "independent contractor" and David A. Korch was an "employee." However, the critical distinction is that Korch removed patient files from the employer's premises. His actions were directly related to the level of care provided to the hospital's patients, not to any administrative aspect of physical therapy such as billing, as in *Kepler*. Korch's conduct departed from "the minimally accepted standards prevailing in the physical therapy profession to the extent that it relates to the level of care provided to a patient." *Kepler*, 720 A.2d at 499.

Accordingly, I concur in the majority's conclusion that Korch's conduct rose to the level of "unprofessional conduct."

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the State Board of Physical Therapy (Board) properly sanctioned David A. Korch, P.T., (Korch) for unpro-

fessional conduct under section 11(a)(6) of the Physical Therapy Act[1] (Act). In so holding, the majority concludes that Korch's removal of patient records from a hospital in order to complete them constitutes the practice of physical therapy, rather than the practice of an administrative function. For the following reasons, I cannot agree.

Section 11(a)(6) of the Act permits the Board to sanction a physical therapist for unprofessional conduct, which includes "any departure from or the failure to conform to the minimal standards of acceptable and prevailing physical therapy practice." 63 P.S. § 1311(a)(6). Section 11(a)(6) is penal in nature and, thus, must be strictly construed. *Kepler v. State Board of Physical Therapy*, 720 A.2d 496 (Pa.Cmwlth.1998). In *Kepler*, we stated that nothing in the language of section 11(a)(6) could reasonably be interpreted to mean that the General Assembly intended for the Board to regulate the administrative practices of physical therapists. *Id.* Rather, the General Assembly intended for the Board to discipline conduct which departs from the minimally accepted standards prevailing in the physical therapy profession "to the extent that it relates to the *level of care* provided to a patient."[2] *Id.* at 499 (emphasis added).

Here, Korch removed patient records from a hospital because he was unable to complete the documentation at the hospital. Because we must strictly construe section 11(a)(6) of the Act, I would con-

1. Act of October 10, 1975, P.L. 383, *as amended*, 63 P.S. § 1311(a)(6).

2. Section 2 of the Act defines "physical therapy" as follows:
   [T]he evaluation and treatment of any person by the utilization of the effective properties of physical measures such as mechanical stimulation, heat, cold, light, air, water, electricity, sound, massage, mobilization and the use of therapeutic exercises and rehabilitative procedures including training in functional activities, with or without assistive devices, for the purpose of limiting or preventing disability and alleviating or correcting any physical or mental conditions, and the performance of tests and measurements as an aid in diagnosis or evaluation of function.
   63 P.S. § 1302.

clude that the removal of patient records from a hospital by the treating physical therapist for the purpose of completing his or her documentation of treatment relates to an administrative function, *not* the level of care provided to the patient.

Indeed, in *Kepler*, this court specifically held that section 11(a)(6) did not apply to the untimely submission of patient treatment records. The majority attempts to distinguish *Kepler* based on the fact that the physical therapist in *Kepler* was an independent contractor and Korch was a hospital employee. (Majority op. at ——, 900 A.2d at 946–47.) However, I cannot accept the validity of this distinction because it would mean that section 11(a)(6) has one meaning for physical therapists who are employees and another for physical therapists who are independent contractors.

The majority also points out that, in the event of a medical emergency, the inability to locate a patient's records at a hospital could have catastrophic consequences for the patient; thus, the removal of patient records from a hospital, for whatever reason, relates to the quality of care given to a patient. (Majority op. at ——, 900 A.2d at 947.) However, the same would be true in the event of a medical emergency where an independent contractor failed to submit timely treatment records; those records could contain information that is pertinent to the emergency. In fact, many different types of administrative errors could have dire consequences for a patient in the event of a medical emergency. However, pursuant to *Kepler*, a negligent administrative practice is not a negligent practice of physical therapy.

Accordingly, I would reverse.